UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHARLES HASKINS, JR., et al.,

    Plaintiffs,

  v.

MIDWEST AIR TRAFFIC CONTROL
SERVICE, INC.,

    Defendant.

No. 12 CV 4584

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

In May 2010, an intra-Afghanistan Pamir Airways flight crashed on its way to Kabul International Airport, killing all aboard. At the time, defendant Midwest Air Traffic Control Service, Inc. provided air-traffic control services in Afghanistan, under an arrangement with the United States military. The plaintiffs represent the estates and families of the deceased on board the flight: twenty-four Afghan citizens, three British citizens, and one American citizen. Prior to engaging in expert discovery and dispositive motions, the parties requested resolution of certain choice-of-law issues.

For the following reasons, Afghan law will apply for determining liability and the law of the decedents' respective domiciles—Afghanistan, the United Kingdom, and Virginia—will apply for determining damages.

**I.    Legal Standard**

Federal courts sitting in diversity apply the forum state's choice-of-law analysis. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014)

(citing *Felder v. Casey*, 487 U.S. 131, 151 (1988)). Illinois has adopted the "most significant relationship" choice-of-law analysis, as set forth in the Restatement (Second) of Conflicts of Law. *Ruiz v. Blentech Corp.*, 89 F.3d 320, 323 (7th Cir. 1996); *In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979*, 644 F.2d 594, 611 (7th Cir. 1981). In this approach, the court identifies separate issues and determines which state has the most significant contacts for each particular issue— a principle known as *depecage*. *Ruiz*, 89 F.3d at 324; *see In re Air Crash Chicago*, 644 F.2d at 611 ("[W]e approve the concept of 'depecage': the process of applying rules of different states on the basis of the precise issue involved.").

The Restatement identifies many factors to consider in order to determine which state has the "most significant relationship." These include general principles "such as the needs of the interstate system; relevant policies of the forum and other interested states; protection of justified expectations; the basic policies underlying the particular field of law; certainty, predictability and uniformity of result; and ease in the determination and application of the law to be applied." *In re Air Crash Chicago*, 644 F.2d at 611–12 (citing Restatement (Second) of Conflicts of Law § 6 (1971)). The relevant jurisdictions to consider include: "(1) the place of the injury; (2) the place of misconduct; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship between the parties is centered." *Id.* at 612 (citing Restatement (Second) of Conflicts of Law § 145). These contacts are to be evaluated according to their relative importance to the issue involved and according to the purposes sought

2

to be achieved by the relevant rules of the interested states. *Id*. (citing Restatement (Second) of Conflicts of Law § 145, cmt. c). Illinois courts will apply foreign law unless it yields an "evil or repugnant result" to the public policy of Illinois. *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 847 (7th Cir. 1999). Under Illinois choice-of-law rules, litigants can formally or informally stipulate to the substantive law to be applied to their case, as long as the stipulation is reasonable. *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1218 n.6 (7th Cir. 1995) (citing *City of Clinton, Ill. v. Moffitt*, 812 F.2d 341, 342 (7th Cir. 1987)).

## II. Choice of Law for Liability

The parties have identified two separate issues ripe for a choice-of-law analysis: liability and damages. In wrongful death actions, the law of the state where the injury occurred typically applies unless another state has a more significant relationship with respect to the particular issue. Restatement (Second) of Conflicts of Law § 175. As to liability, the parties agree Afghanistan has the most significant relationship: the plane crashed in Afghanistan, it was an intra-Afghanistan flight for an Afghan airline, and alleged conduct leading to the crash took place in Afghanistan. Both sides also agree that Afghan liability law conflicts with Illinois law on the issue of joint and several liability. The parties dispute the particulars of Afghan law on joint and several liability, and on contributory fault, but agree that those issues are best resolved at a later stage in the case, when the parties have a more comprehensive opportunity to present arguments and competing expert testimony. Therefore, Afghan law applies to liability.

3

## III. Choice of Law for Damages

For wrongful death damages, the parties concur that under the Restatement approach, domicile is a paramount factor because of the domiciliary state's interest in compensating its injured persons and in limiting tort recoveries against domiciled defendants. *See, e.g., In re Air Crash Chicago*, 644 F.2d at 612–13 (domiciliary states have an interest in ensuring that "plaintiffs are adequately compensated for their injuries and that the proceeds of any award are distributed to the appropriate beneficiaries") (citing *Hurtado v. Superior Court*, 11 Cal.3d 574, 584 (1974)); *Jones v. State Farm Mut. Auto. Ins. Co.*, 289 Ill.App.3d 903, 918 (1st Dist. 1997) ("Within the area of tort law, the domiciles of the parties are generally considered significant contacts for conflicts analysis because a jurisdiction will normally formulate tort policies with reference to the competing interests of compensating its domiciliaries for injury and of limiting tort recoveries against its domiciliaries."); *In re Aircrash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 948 F.Supp. 747, 756 (N.D. Ill. 1996) (the law of the injured person's domicile is typically applied for compensatory damages because "that state has the greatest interest in ensuring that its residents are appropriately compensated for their injuries") (listing authority); *see also* Restatement (Second) of Conflict of Laws § 178, cmt. b ("In a situation where one state is the state of domicil of the defendant, the decedent and the beneficiaries, it would seem that, ordinarily at least, the wrongful death statute of this state should be applied to determine the measure of damages.").

There is no dispute between the parties that Afghan law should determine the appropriate wrongful death damages for the twenty-four deceased Afghans on board the flight.[1] Similarly, there is no dispute that the law of the United Kingdom should be applied to determine wrongful death damages for the three British passengers.[2] Therefore, Afghan law and the law of the United Kingdom on damages will be applied to those decedents. *See Rexford Rand*, 58 F.3d at 1218 n.6. The only dispute is over the choice of law for the sole American decedent, Wayne Stancil, and whether the law of his domicile (Virginia) or the law of his heir's domicile (Colorado) should govern for damages.[3]

At the time of his death, Stancil's domicile was in Virginia. Although there is some evidence that he may have intended to move to Colorado upon his return from Afghanistan, there is no evidence that he actually abandoned his Virginia domicile or took affirmative steps to move to Colorado. His sole beneficiary appears to be his

---

[1] The parties are in agreement that Afghan damages law requires payment of a "bloodshed price" or *diya*, but disagree on the amount required. That particular issue will be addressed at a later stage of the litigation. By requiring a fixed payment for a wrongful death, Afghan law conflicts with Illinois law on wrongful death damages. *See* 740 ILCS 180/2.

[2] Because of their agreement on this issue, the parties' briefs only touch on whether there are conflicts between Illinois's and the United Kingdom's laws on wrongful death damages. While the law in both jurisdictions appears to be largely similar, the United Kingdom uses a multiplier to calculate future pecuniary losses from the wrongful death, and Illinois does not.

[3] Neither party suggests that Illinois law on wrongful death damages should govern. Colorado's statutory cap conflicts with Illinois's law, which has no cap. However, the parties do not address any potential conflicts between Virginia and Illinois wrongful death damages. Unlike Illinois, Virginia allows for punitive damages in certain circumstances. Va. Code § 8.01-52. But there is no real conflict because the Stancil complaint makes no request for punitive damages. Otherwise, there appears to be no conflict between Illinois and Virginia law on wrongful death damages. *See* 740 ILCS 180/2; VA Code § 8.01-52. But the parties are stipulating to either Colorado or Virginia law, and since such a stipulation is reasonable, it will be enforced.

mentally disabled daughter, who was domiciled in Colorado at the time of Stancil's death. Virginia and Colorado law conflict on wrongful death damages: Colorado's wrongful death statute caps damages at $250,000 (adjusted for inflation) where the decedent "left neither a widow, a widower, minor children, nor a dependent father or mother." Colo. Rev. Stat. § 13-21-203(1)(a). Virginia law does not limit wrongful death damages as long as the award "seem[s] fair and just." Va. Code § 8.01-52. Plaintiffs want Virginia law to govern damages for Stancil's wrongful death action, but Midwest argues that Colorado law should apply.

Typically, a Restatement-based choice-of-law determination would take into account the place of injury, the place where the conduct occurred, the domicile of the parties, and the center of the parties relationship. Restatement (Second) of Conflict of Laws § 145. But in this case, the parties only argue for the law of competing domiciliary states.

Domiciliary states have an interest in ensuring that "plaintiffs are adequately compensated for their injuries and that the proceeds of any award are distributed to the appropriate beneficiaries." *In re Air Crash Chicago*, 644 F.2d at 613 (citing *Hurtado*, 11 Cal.3d at 584). Virginia has an interest in ensuring that the estate of its domiciled decedent, Stancil, is adequately compensated. *See, e.g., Peoples Bank & Trust Co. v. Piper Aircraft Corp.*, 598 F. Supp. 377, 380 (S.D. Fla. 1984) (decedent's state "has a substantial interest in the nature and extent of his compensatory relief" because the decedent "availed himself of the rights and duties" of that state, including "the ability of the deceased and his beneficiaries to be

6

compensated for their injuries"). On the other hand, Stancil's daughter appears to be his sole beneficiary. Because wrongful death damages would flow to Stancil's daughter, Colorado has an interest in ensuring that she will receive compensation. But while Stancil's daughter is the beneficiary, the fact remains that the wrongful death action is brought by a special representative of Stancil's estate. The decedent's domicile has a greater interest in ensuring compensation for the estate than any one beneficiary's domicile.[4]

Looking to the basic policies underlying wrongful death actions, and the competing interests of Virginia and Colorado, Virginia has a greater interest in applying its law of damages for Stancil's wrongful death action. There are three distinct goals of a wrongful death action: (1) compensation for survivors, (2) deterrence of conduct, and (3) limitation (or lack thereof) upon recoverable damages. *Hurtado*, 11 Cal.3d at 584. Compensation concerns the plaintiffs and "reflects the state's interest in providing for compensation and in determining the distribution of the proceeds, said interest extending only to local decedents and local beneficiaries." *Id*. The aspects of deterrence and limitation of damages concern defendants, and reflect the state's interest in deterring conduct within its borders and "in protecting *resident* defendants from excessive financial burdens." *Id*. (emphasis added); *see In re Aircrash Roselawn*, 948 F.Supp. at 756–58.

---

[4] It makes sense to give greater weight to the decedent's domicile than the beneficiary's to avoid the uncertainty and unnecessary complexity that would arise in cases where multiple beneficiaries were domiciled in different states. While this case presents only one beneficiary, and there is no indication that Stancil's estate is actually being administered in Virginia, it is nevertheless the case that Virginia has a threshold interest in making sure the claims of Virginian decedents are compensated under Virginia law.

7

Neither Virginia nor Colorado has an interest in deterring the Kansas-and Florida-based Midwest, [161] at 8, or conduct that occurred in Afghanistan, but both have an interest in compensating survivors. Colorado, however, does not have an interest in imposing its limitation on wrongful death damages here because Midwest is not a Colorado defendant. The purpose of limiting recovery for wrongful death is to protect resident defendants. *Foster v. United States*, 768 F.2d 1278, 1283 (11th Cir. 1985); *see Hurtado*, 11 Cal.3d at 580–81 (citing *Reich v. Purcell*, 67 Cal.2d 551, 556 (1967)); *see also Jones*, 289 Ill.App.3d at 918 ("Within the area of tort law, the domiciles of the parties are generally considered significant contacts for conflicts analysis because a jurisdiction will normally formulate tort policies with reference to the competing interests of compensating its domiciliaries for injury and of limiting tort recoveries against its domiciliaries.").

But when there is no domiciliary defendant, limiting recovery "advances no policy behind the limitation," and a limit on recovery should not be applied. *Foster*, 768 F.2d at 1283. For example, in *Hurtado v. Superior Court*, 11 Cal.3d 574 (1974), the decedent and his heirs were domiciled in Mexico, which capped wrongful death damages. The decedent was killed in a car accident in California, and all defendants were domiciled in California, which did not limit wrongful death damages. California law governed wrongful death damages "[b]ecause Mexico has no interest in applying its limitation of damages in wrongful death actions to nonresident defendants or in denying full recovery to its resident plaintiffs." *Id.* at 586–87. Subsequent cases have similarly held that applying the law of a party's domicile to

limit recovery is inappropriate when the defendant is not domiciled in that state, and other states have equal or greater interests. For example, in *Foster v. United States*, 768 F.2d 1278 (11th Cir. 1985), the misconduct occurred in Illinois and the sole heir was domiciled in Illinois, but the decedents were domiciled in Florida, which limited recovery. Because the defendant was not domiciled in Florida, Illinois's interest in deterring misconduct and compensating its domiciled beneficiary were greater than Florida's interest in limiting the heir's recovery. *Id*. at 1284. In *Schippers v. United States*, 715 F.3d 879 (11th Cir. 2013), the Eleventh Circuit declined to apply Florida damages law, which limited recovery, even though the decedents in a Texas plane crash were all domiciled in Florida. Texas had more contacts with the incident, and the court gave less weight to the decedent's domicile because the "'only purpose' of limiting the beneficiaries is to protect defendants—which should not be applied when the defendant, as here, is a non-domiciliary." *Id*. at 890.

Midwest is not a Colorado defendant, and therefore should not be entitled to the protections afforded to defendants domiciled in Colorado. And Colorado has no interest in protecting Midwest, a nonresident defendant, by limiting the recovery to a mentally disabled beneficiary domiciled in Colorado. The Colorado statutory cap on wrongful death damages specifically carves out wrongful death actions involving dependents reliant on the decedent's economic support. The cap does not apply when the decedent leaves behind "a widow, a widower, minor children, [o]r a dependent father or mother." Colo. Rev. Stat. § 13-21-203(1)(a). Adult, mentally

9

disabled children such as Stancil's daughter are not specifically listed as dependents, but the general exception for dependents suggests that Colorado does not have a strong interest in capping the recovery for a mentally disabled, dependent beneficiary in favor of limiting the recovery against a nonresident defendant company.

*Laugelle v. Bell Helicopter Textron, Inc.*, No. CV 10C-12-054 PRW, 2013 WL 5460164 (Del. Super. Ct. Oct. 1, 2013), cited by Midwest, does not compel a different result. In *Laugelle*, the decedent and his beneficiaries were domiciled in Massachusetts, the decedent died in a helicopter crash off the coast of Texas, and some of the defendants were incorporated in Delaware but all were headquartered elsewhere. The plaintiffs argued that Delaware law should govern damages, but the defendants argued that Massachusetts law should apply; Massachusetts law did not allow recovery for survivors' grief. Given those two options, the court determined that the quality of contacts favored Massachusetts over Delaware because "Delaware has virtually no connection" to the issue of damages. *Id*. at *4. *Laugelle* did not involve a situation where the decedent and beneficiaries were domiciled in different states. And unlike Delaware's lack of connection to wrongful death damages in *Laugelle*, Virginia has a strong connection to damages, as it was Stancil's domicile.

Like the defendants in *Hurtado*, Midwest in effect argues that Colorado would prefer to protect a nonresident defendant from excessive liability over ensuring that a resident, dependent beneficiary is fully compensated. But

"[l]imitations of damages express no such state interest," and "[a] policy of limiting recovery in wrongful death actions does not reflect a preference that widows and orphans should be denied full recovery." *Hurtado*, 11 Cal.3d at 586 (marks omitted). Evaluating the contacts of Colorado and Virginia "according to the purposes sought to be achieved by the relevant rules," *In re Air Crash Chicago*, 644 F.2d at 612, Virginia has a greater interest in ensuring that the estate of its domiciled decedent, Stancil, and his beneficiaries are adequately compensated for his death.

## IV. Conclusion

Afghan law will apply for determining liability, and the law of the decedents' respective domiciles—Afghanistan, the United Kingdom, and Virginia—will apply for determining damages. The parties are directed to file a status report with a proposed expert discovery schedule no later than July 13, 2016.

ENTER:

                                             Manish S. Shah
                                             United States District Judge

Date: 7/8/2016